# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WENDELL V. TINSLEY, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. JKB-16-2526 |
| WEXFORD HEALTH SOURCES INC., | * | |
| Defendant | * | |

## MEMORANDUM

Pending is a motion to dismiss or, in the alternative, for summary judgment filed by defendant Wexford Health Sources, Inc. ("Wexford"). ECF 10. Plaintiff has filed an opposition (ECF 17) and Wexford has replied. ECF 18. The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, defendant's motion, construed as a motion for summary judgment, shall be granted.

## Background

Plaintiff Wendell V. Tinsley, a state inmate confined at the Western Correctional Institution in Cumberland, Maryland, filed the instant complaint on July 8, 2016, naming Wexford as the sole defendant. ECF 1, p. 1. He alleged that on April 19, 2016, he was seen by Dr. Manning, an orthopedist, for follow-up, which was more than a year overdue. *Id.*, p. 3. Dr. Manning took x-rays of plaintiff's right leg and allegedly saw that plaintiff's leg was not receiving calcium. *Id.* Plaintiff states that he was advised by Manning that something was blocking his leg from receiving calcium and an ultrasound and venous Doppler sonogram of the leg were needed to determine why his leg was not receiving calcium; and that the tests needed to be done so that the blockage did not cause other damage; and that after the tests were done other important steps would be taken. *Id.*, p. 4.

On May 31, 2016, plaintiff was advised by Physician's Assistant Brenda Hall that despite the orthopedist recommendation, Wexford personnel had denied the tests without explanation. ECF 1, p. 4. Plaintiff states that he had been trying to see the orthopedist for a year and that his physical therapist had also requested plaintiff see an orthopedist because his leg was not getting stronger after a 2014 surgery at Bon Secours Hospital. *Id*. He alleges that the denial of the additional testing violates his rights under the Eighth Amendment and demonstrates deliberate indifference to his medical need. *Id*. pp. 4-5.

In his opposition, plaintiff indicates that he underwent a complete reconstruction of his Achilles tendon on April 11, 2014. ECF 17-1, pp. 1-2.[1] He states that the discharge instruction from surgeon Dr. Krishnaswamy directed that he report specific issues to his surgeon and direct other post-surgical issues to his physician. *Id*., p. 2. After surgery, plaintiff complained of "burning pain" around his surgical site. He was seen by John Morgan, M.D., on April 21, 2014, who noted that the surgical site was infected. Plaintiff was treated with antibiotics. *Id*. Plaintiff requested post-surgical follow-up care as directed by his surgeon and complained of increased pain and swelling in his leg. *Id*.

Plaintiff states that he was denied post-follow-up consultation with his surgeon but was referred to Dr. Lawrence Manning who ordered several diagnostic tests for plaintiff's right leg due to concerns of blood clots. *Id*., p. 3. After the ultrasound and Doppler tests showed that plaintiff's Achilles tendon was irregularly 6 cm thicker, no post-Achilles surgery follow-up consultations were provided. *Id*. Plaintiff also alleges that on June 20, 2014, Dr. Darick David suggested more advanced testing. *Id*. Plaintiff further alleges that, on an unspecified date, Dr.

---

[1] In his opposition to defendant's dispositive motion, plaintiff raises for the first time a number of allegations not contained in his initial complaint against a number of medical providers not named as defendants. ECF 17. Those complaints concern lack of post-surgical follow-up care and physical therapy, as well as concerns about back pain. These complaints are unrelated to the diagnostic testing complained of in the initial complaint, are not properly before the court, and will not be considered.

Sisay recommended he return to Dr. Manning for follow up, but that did not occur. *Id*. He alleges that he was not seen by Krishnaswamy or Manning despite several post-follow-up consultation orders. *Id*.

Plaintiff alleges that Wexford failed to follow the directions that he be seen for follow-up medical care. ECF 17-1, pp. 4-5. He alleges that "Medical Director Dr. Kasahun Temesgen, M.D., Dr. John Morgan, M.D., Dr. Colin Ottey, M.D., Dr. Yonas Sisay, M.D., Dr. Purcell Bailey, M.D., and other Defendant DOC, agents or contractors,[2] jointly and severally, had actual knowledge of Dr. Ashok Krishnaswamy and Bon Secours Hospital ("BSH") Standard of Care, and Dr. Lawrence Manning, M.D., post-Achilles tendon surgical follow–up medical recommendations." *Id*., p. 6.

Plaintiff states in his opposition response that "Wexford is legally obligated to provide all treatment of physical injuries in a manner consistent with applicable standard-of-medical-care according to Inmate Medical Health Care and Utilization Services Contract." *Id*., p. 7. Plaintiff claims that the standard of care for his Achilles tendon repair required follow-up with his surgeon, and that unidentified policies and practices of Wexford denied him the appropriate follow-up medical care. *Id*.

Defendant offers plaintiff's pertinent medical records as well as an affidavit from Dr. Temesgen in support of its motion. ECF 11-2 (medical records); ECF 18-1 (Temesgen affidavit, as corrected).

The undisputed records demonstrate that plaintiff underwent an Achilles tendon repair in 2014. ECF 11-2. He is seen regularly and evaluated and treated by prison medical providers in the chronic care clinic. *Id*. He has been prescribed Robaxin, Naprosyn, and Mobic as analgesic pain medication for his ankle injury. *Id*.

---

[2] None of these individuals were named in plaintiff's complaint. See ECF 1.

On April 19, 2016, plaintiff was evaluated by Lawrence Manning, M.D., an orthopedist, regarding his right ankle pain. ECF 11-2, p. 12. It was noted that plaintiff's Achilles tendon was repaired two years prior. Plaintiff complained of ankle and leg pain daily. He walked with a normal gait and his right ankle range of motion was observed to be "good." *Id*. Additionally, his right ankle surgical scar was observed as being "well healed." X-rays of the right ankle were negative. He was diagnosed as suffering from chronic right ankle pain post-Achilles repair. Manning recommended a wedge support for plaintiff's heel. Manning also recommended an ultrasound of plaintiff's right leg to check plaintiff's Achilles tendon. Additionally, he recommended a venous Doppler of the right leg to evaluate plaintiff's venous system. *Id*. There is no indication in the medical record that Manning was concerned about plaintiff's leg and ankle not receiving calcium, nor is there a reference in the chart that the tests were requested to determine what was blocking plaintiff's leg from receiving calcium. *Id*.

Plaintiff was evaluated by Yonas Sisay, M.D., on April 20, 2016, for a provider chronic care visit related to plaintiff's right ankle. *Id*., pp. 1-2. Sisay noted Manning's findings and ordered a wedge support for plaintiff's heel. *Id*. Sisay submitted requests for consultation so that plaintiff could receive the recommended ultrasound and venous Doppler tests. *Id*. Plaintiff's pain medication was renewed. *Id*.

On May 31, 2016, and July 20, 2016, plaintiff was seen by Brenda Taft-Hall, R.N.P. *Id*., pp. 3-6. Plaintiff inquired as to the status of the diagnostic testing and was advised on May 31, 2016, that the tests were denied pending approval by the Regional Medical Director and that he was scheduled to be seen by the Regional Medical Director to assess the need for the recommended testing. *Id*., p. 3. On July 20, 2016, he was advised that his evaluation with the Regional Medial Director was scheduled for July 29, 2016. *Id*., p. 5.

Plaintiff was interviewed by Kasahun Temesgen, M.D., the Regional Medial Director on July 29, 2016. *Id*. p. 7. After reviewing plaintiff's medical chart, Temesgen approved the diagnostic tests recommended by Manning. Temesgen agreed that the tests were required to rule out phlebitis (inflammation of a vein). *Id*.

Plaintiff was transported to the University of Maryland Medical System on September 16, 2016, and underwent a venous Doppler examination and ultrasound of his right leg and ankle. *Id*., pp. 13-17. The venous Doppler test was negative. Normal blood flow patterns and arterial perfusion were observed in both legs and feet. *Id*., p. 13. No occlusive arterial disease was observed. *Id*. The ultrasound showed Achilles tendon thickening secondary to the surgical repair. No new significant tears were identified. *Id*., p. 15.

Plaintiff was seen by Dr. Sisay on September 27, 2016, due to continued complaints of right lower extremity pain. *Id*. pp. 10-11. The results of the diagnostic studies were reviewed with plaintiff and he was provided copies of the reports. *Id*., p. 10. Additionally, plaintiff was prescribed Mobic for pain relief and advised to return to Manning for a post-diagnostic follow-up visit. *Id*.

Temesgen avers that plaintiff is seen regularly by his treating providers as a chronic care inmate and that he may seek additional medical attention through the use of the prison sick call system. ECF 18-1 ¶ 12.

## Standard of Review

**A.     Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be

granted does not require Defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 563. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusional factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**B.     Motion for Summary Judgment**

Summary judgment is governed by Rule 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility."

*Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson,* 477 U.S. at 249, the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Catrett*, 477 U.S. at 322-23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

**Analysis**

A. Wexford

The complaint does not allege any personal participation by Wexford in regard to the challenged denial of treatment. Liability under § 1983 attaches only upon personal participation

by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Plaintiff does not attribute any action or inaction to Wexford resulting in constitutional harm. Other than being named in the caption of the complaint, it is not mentioned anywhere in the factual allegations of the complaint. Simply stated, plaintiff's allegations fail to state a claim against Wexford.

To the extent plaintiff intended to hold Wexford liable as a supervisor, his claim also fails. It is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no *respondeat superior* liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

Supervisory liability under § 1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Where, as here, a plaintiff points to no action or inaction on the part of supervisory defendants that resulted in a constitutional injury, the claims against supervisory personnel must be dismissed.

This determination, however, does not preclude the court from examining plaintiff's

claim of inadequate medical care by Wexford personnel relative to the ordering of the diagnostic testing.

B. Medical care

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it. . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences. . . . To lower this threshold would thrust federal courts into the daily practices of local police departments." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious

9

medical condition. *See Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

"[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998). Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. *Id*. at 169 (action inconsistent with an effort to hide a serious medical condition refutes presence of doctor's subjective knowledge).

In essence, the treatment rendered must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness. *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier*, 896 F.2d at 851. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant]

must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *Johnson*, 145 F.3d at 168. Mere negligence or malpractice does not rise to a constitutional level. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986).

The right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir. 1977). The record evidence indicates that plaintiff's requests were considered and his needs were addressed. The fact that every request for medical tests was not approved does not reflect deliberate indifference. To the extent some of plaintiff's complaints have gone unaddressed, "an inadvertent failure to provide adequate medical care does not amount to deliberate indifference." *Gamble*, 429 U.S. at 105. Plaintiff's numerous grievances with the medical decisions made regarding what tests and treatments are necessary in light of the symptoms presented are reflective of his frustration, but "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse,* 428 F.2d 1, 6 (3rd Cir. 1970)). There are no exceptional circumstances alleged in this case.

Upon Manning's recommendation that plaintiff undergo further diagnostic testing, the request was held until plaintiff could be interviewed and the request evaluated by the regional medical director. ECF 18-1, ¶ 14. The director interviewed plaintiff, reviewed the medical records, and approved the request for further diagnostic testing, which was subsequently

performed. The scheduling of the test required the coordination of medical staff, DPSCS custody, and the off-site medical provider. *Id*. Both diagnostic tests were negative. Temesgen avers that the delay in the scheduling of plaintiff's diagnostic testing did not cause any injury. ECF 18-1 ¶ 15. In sum, plaintiff's claim regarding the delay in diagnostic testing is nothing more than a disagreement with the decision of his medical providers. Defendant is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, defendant's dispositive motion, treated as a motion for summary judgment, will be GRANTED and judgment will be ENTERED in favor of defendant and against plaintiff. A separate Order follows.


<u>August 8, 2017</u>                       _____/s/_____
Date                                                         James K. Bredar
                                                                            United States District Judge